**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION**

DEBRA COLEMAN,

        Plaintiff,

v.                                              Case No. 2:20-cv-733-JRK

KILOLO KIJAKAZI,
Acting Commissioner of Social
Security,[1]

        Defendant.
_____

## OPINION AND ORDER[2]

### I.  Status

Debra Coleman ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of type 1 diabetes, anemia, nerve damage/neuropathy, depression, kidney disease, blood pressure issues, and visual limitations. See Transcript of

---

[1] Kilolo Kijakazi recently became the Acting Commissioner of Social Security. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 18), filed April 22, 2021; Reference Order (Doc. No. 20), entered April 23, 2021.

Administrative Proceedings (Doc. No. 19; "Tr." or "administrative transcript"), filed April 22, 2021, at 65, 74, 167, 192. Plaintiff filed applications for DIB on April 17, 2018 and July 2, 2018, alleging in both applications a disability onset date of January 2, 2017.[3] Tr. at 159-60, 161-64. The applications were denied initially, Tr. at 64-71, 72, 85, 86-88, and upon reconsideration, Tr. at 73-83, 84, 92, 93-98.

On November 22, 2019, an Administrative Law Judge ("ALJ") held a hearing, during which he heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 34-63. Plaintiff was forty-seven years old at the time of the hearing. Tr. at 38, 40. On December 13, 2019, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 17-28.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council. See Tr. at 4-5 (Appeals Council exhibit list and order), 258-61 (representative memorandum). On July 23, 2020, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On September 24, 2020, Plaintiff

---

[3] Although actually filed on April 17, 2018 and July 2, 2018 respectively, see Tr. at 159, 161, the protective filing date for the DIB applications is listed elsewhere in the administrative transcript as April 16, 2018, see, e.g., Tr. at 64, 74.

commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues the ALJ did not properly evaluate the opinions of her treating endocrinologist, Vita Anksh, M.D., and her treating oncologist, Douglas Heldreth, M.D. See Joint Memorandum of Law (Doc. No. 24; "Joint Memo"), filed August 2, 2021, at 13-16. Responding, Defendant contends the ALJ properly considered the opinions and found them unpersuasive. Id. at 23-28. After a thorough review of the entire record and consideration of the parties' Joint Memo, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II.   The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past

---

[4]   "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

- 3 -

relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 19-28. At step one, the ALJ determined Plaintiff "has not engaged in substantial gainful activity since January 2, 2017, the alleged onset date." Tr. at 19 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: diabetes mellitus, peripheral neuropathy, chronic kidney disease with anemia, and diabetic retinopathy/macular edema." Tr. at 19 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 21 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform less than the full range of sedentary work as defined in 20 [C.F.R. §] 404.1567(a) such that [she] can only occasionally climb stairs and ramps, balance, stoop, kneel, and crawl. [Plaintiff] can never climb ladders and scaffolds and crawl.

> [Plaintiff] can only frequently handle and finger. [Plaintiff] must avoid concentrated exposure to extreme cold and heat and all exposure to moving mechanical parts and unprotected heights.[5]

Tr. at 21 (emphasis omitted).

At step four, the ALJ relied on the testimony of the VE and found that Plaintiff "is unable to perform any past relevant work" as a "Loan Officer," an "Account Executive," and a "Customer Service [Representative] (financial)." Tr. at 27 (emphasis and citation omitted). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age ("44 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ again relied on the VE's testimony and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 27 (emphasis and citation omitted), such as "Order Clerk (food and beverage)," "Final Assembler," and "Semiconductor Bonder," Tr. at 28. The ALJ concluded Plaintiff "has not been under a disability . . . from January 2, 2017, through the date of th[e D]ecision." Tr. at 28 (emphasis and citation omitted).

---

[5] Even though the RFC in the written Decision mistakenly permits Plaintiff to occasionally crawl while at the same time saying she can never crawl, Tr. at 21, the hypothetical presented to the VE, on whose testimony the ALJ relied to make the step four and step five findings, correctly stated Plaintiff could "never crawl." Tr. at 59.

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As explained earlier, Plaintiff challenges the ALJ's handling of the opinions rendered by treating specialists Dr. Anksh and Dr. Heldreth.

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (March 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Because Plaintiff filed her DIB applications after that date, the undersigned applies the revised rules and Regulations.

Under the new rules and Regulations, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).[6] The following factors are relevant in determining the weight to be given to a medical opinion: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other

---

[6] "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to perform physical demands of work activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20 C.F.R. § 404.1513(a)(2); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources").

evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors, and the ALJ must explain how these factors were considered. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ is not required to explain how he or she evaluated the remaining factors. 20 C.F.R. § 404.1520c(b)(2). However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. § 404.1520c(b)(3).

When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. § 404.1520c(b)(1).

Here, at issue are a Physical Residual Functional Capacity Questionnaire ("PRFC") filled out by Dr. Anksh on April 16, 2019, Tr. at 348-51, and a Medical Statement Regarding Chronic Anemia for Social Security Disability Claim ("MS re Chronic Anemia") filled out by Dr. Heldreth on November 14, 2019, Tr. at 557. See Joint Memo at 13. In the PRFC, among other things, Dr. Anksh opined

that due to physical and mental impairments, Plaintiff is incapable of even low stress jobs; she can walk at most one- to two-blocks without rest or pain; she can sit twenty minutes and stand fifteen minutes at a time; she can sit or stand/walk less than two hours per day; she must walk around every five minutes for four minutes at a time; she needs to shift positions every hour; she can never lift any amount; and she can never twist, stoop, crouch, or climb ladders and can rarely climb stairs. Tr. at 348-51. In the MS re Chronic Anemia, Dr. Heldreth opined in pertinent part that Plaintiff can stand or sit for thirty minutes at a time; she cannot work at all; she can lift ten pounds occasionally; and cannot lift anything frequently. Tr. at 557.

The ALJ discussed in detail Plaintiff's medical records, Tr. at 22-25, before addressing the opinions of Dr. Anksh on the PRFC form and Dr. Heldreth on the MS re Chronic Anemia, Tr. at 26.[7] As to the PRFC form, the ALJ wrote in pertinent part as follows:

> The opinion . . . is not persuasive as this opinion is inconsistent with clinical observations and [Plaintiff's] activities. As noted [previously,] repeated observation showed intact motor function, sensory function, reflexes, gait, and coordination. [Plaintiff] never sought or received care from a mental health provider, and psychological observation showed a normal mood, affect, thought processes, thought content, psychomotor activity, abstract reasoning, memory,

---

[7] The ALJ did not refer to Dr. Anksh and Dr. Heldreth by name, instead referring to opinions of a "primary care provider" at Exhibit 6F and a "treating provider" at Exhibit 16F. These exhibits contain the relevant opinions from Dr. Anksh and Dr. Heldreth.

- 9 -

> attention, concentration, insight, and judgment. Furthermore, [Plaintiff] continued to use a computer to check email, play games, research, and go on social media, read, watch television, drive, shop, perform personal care, and she had no problems completing forms relating to medical evaluation.

Tr. at 26 (referring to Exhibit 6F (Tr. at 347-51), containing the PRFC form completed by Dr. Anksh). As to the MS re Chronic Anemia, the ALJ stated:

> The opinion of [Dr. Heldreth] finding that [Plaintiff] was unable to work for any amount of time daily due to chronic anemia and she was otherwise limited to significantly less than the full range of sedentary work is not persuasive as this opinion is not consistent with [Plaintiff's] ongoing activities of daily living, generally unremarkable clinical evaluation, and repeated physical observation showing only mild abnormalities.

Tr. at 26 (referring to Exhibit 16F (Tr. at 556-57), containing the MS re Chronic Anemia completed by Dr. Heldreth).

The ALJ's reasons for discounting the opinions of Dr. Anksh and Dr. Heldreth are supported by substantial evidence. The ALJ correctly pointed out the clinical "observations" and "evaluation[s]" were rather inconsistent with the extreme limitations assigned by both doctors. Tr. at 26; see, e.g., Tr. at 288, 295, 410, 419, 467, 479, 490, 501, 549 (noting normal function, gait, coordination, etc.). Further, the ALJ correctly observed that, to the extent Dr. Anksh based his opinion on alleged mental limitations, Plaintiff did not receive separate care from a mental health provider, and clinical notes about her mental status were not particularly remarkable. Tr. at 26; see, e.g., Tr. at 274, 288, 295, 410, 519,

549; see also Tr. at 302 (findings of consultative mental examiner). And finally, the ALJ determined that Plaintiff has a number of daily activities that are inconsistent with both doctors' opinions.[8] See Tr. at 46-52, 300-02.

Plaintiff contends that in discounting Dr. Anksh's opinion, the ALJ impermissibly ignored her fatigue, shaking, sweating, dizziness, light-headedness, and nausea; and in discounting Dr. Heldreth's opinion, the ALJ ignored her chronic anemia. Joint Memo at 14-15. The administrative transcript does document these symptoms and the anemia. See, e.g., Tr. at 272, 286, 290, 293, 314, 317, 408, 513, 516, 518, 558 (fatigue); Tr. at 272 (shaking and sweating); Tr. at 407 (dizziness and light-headedness); Tr. at 280, 407, 417, 465, 469 (nausea); Tr. at 311-12, 513-14, 558 (anemia). But, the ALJ earlier in the Decision recognized the symptoms and anemia, discussing that symptoms generally were not associated with "adverse clinical signs," Tr. at 24, and symptoms and anemia were "stable with ongoing treatment." Tr. at 25. The ALJ stated, "Despite reported fatigue, her anemia, and her kidney conditions, [Plaintiff] continued to perform a wide range of activities of daily living," suggesting that Plaintiff "is not as limited as is alleged." Tr. at 25. These findings are supported by substantial evidence. Accordingly, the ALJ's election

---

[8] Perhaps some of Plaintiff's activities are more restrictive than the ALJ recognized, but generally, Plaintiff's ability to engage in such activities is inconsistent with the extreme limitations assigned by Dr. Anksh and Dr. Heldreth.

not to discuss this particular symptomology and anemia when discounting the doctors' opinions does not amount to reversible error.

## V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on January 6, 2022.

*[signature: James R. Klindt]*

JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record